EFILED IN OFFICE
CLERK OF SUPERIOR COURT
BALDWIN COUNTY, GEORGIA

**SUCV2022050687**
JUBTNM
DEC 29, 2022 11:19 AM

Mitch Longino, Clerk
Baldwin County, Georgia

IN THE SUPERIOR COURT OF BALDWIN COUNTY
STATE OF GEORGIA

| | |
|---|---|
| GEORGE PENNINGTON, | |
| Plaintiff, | |
| v. | Civil Action No.: _____ |
| THE BOARD OF TRUSTEES OF THE GEORGIA MILITARY COLLEGE, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff George Pennington, and brings this action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and the Fair Employment Practices Act of 1978, O.C.G.A. § 45-19-20, *et seq.* Plaintiff alleges that Defendant The Board of Trustees of The Georgia Military College subjected Plaintiff to discrimination based on age, resulting in Plaintiff's termination, and respectfully shows the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has jurisdiction over the subject matter of this civil action pursuant to the enforcement provisions of the Age Discrimination in Employment Act and the Fair Employment Practices Act.

2.

Venue is proper in this Court as Plaintiff was employed, and the events underlying this action occurred in Milledgeville, Baldwin County, Georgia.

## PARTIES

3.

Plaintiff George Pennington (hereinafter, "Plaintiff" or "Pennington") is a citizen of the United States and a resident of Baldwin County, Georgia. At all times relevant to this suit, Mr. Pennington was employed with Defendant The Board of Trustees of The Georgia Military College.

4.

At all relevant times, Mr. Pennington was considered a covered, non-exempt employee under the Age Discrimination in Employment Act and the Fair Employment Practices Act.

5.

Defendant The Board of Trustees of The Georgia Military College oversees Georgia Military College, as well as its preparatory school, (hereinafter, "Defendant"), a public educational entity created and recognized under the laws of the State of Georgia. *Bd. of Trustees of Ga. Military Coll. v. O'Donnell*, 835 S.E.2d 688, 692 (Ga. Ct. App. 2019) (quoting *Ga. Military College v. Santamorena*, 237 Ga. App. 58, 59 (1) (1999)); *see also* O.C.G.A. § 20-3-541.

6.

Defendant may be served with process upon a chief executive officer, Chairman of the Board of Trustees George Hogan, or the clerk thereof pursuant to O.C.G.A.§ 9-11-4(e)(5). Defendant's principal office is located at 201 East Greene Street, Milledgeville, Baldwin County, Georgia 31061.

7.

Defendant has employed in excess of 20 employees, working for at least 20 calendar weeks, in 2022 and in preceding years. As a result, Defendant is a covered employer under the Age Discrimination in Employment Act.

8.

To the extent that Defendant claims that it is a department, board, bureau, commission, authority, or other agency of the State of Georgia, Defendant is a "public employer" or "employer" pursuant to the Fair Employment Practices Act.

9.

The Fair Employment Practices Act was established through legislative act and created a private right of action against the State of Georgia and its agencies, departments, and arms of the state.  As a result, Defendant is not entitled to sovereign immunity on said claim, nor on claims brought under the Age Discrimination in Employment Act. *See Williamson v. Dep't of Human Res.*, 258 Ga. App. 113 (2002).

## STATEMENT OF FACTS

10.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 9, as if the same were set forth herein.

11.

Mr. Pennington was employed with Defendant beginning in May 2017, where he worked as an Electrician in Defendant's Engineering Department.

12.

In October 2018, Mr. Pennington applied for and received a transfer to Defendant's Information Technology Department, where he served most-recently as a Support Technician Tier 1.

13.

Mr. Pennington was based out of Defendant's main campus, located at 201 East Greene Street, Milledgeville, Baldwin County, Georgia 31061.

14.

Defendant is an educational institution, with both a military junior college and a preparatory school, and Defendant has employed more than 500 individuals in 2021 and in prior calendar years.

15.

Mr. Pennington was born on October 7, 1955, and he was 65 years old during the events underlying this litigation.

16.

Mr. Pennington, along with a number of other members of his family, are graduates of Defendant's educational programs.

17.

At all relevant times, Mr. Pennington's performance in his position was exemplary.

18.

In fact, during Mr. Pennington's 2017 job interview, he presented himself to Defendant as a loyal employee, and Mr. Pennington guaranteed that if he were hired, he would remain employed with Defendant for the foreseeable future.

19.

Indeed, Defendant neither asked, nor did Mr. Pennington offer, his age during the interview. Defendant hired Mr. Pennington and he began work in May 2017.

20.

Defendant's Information Technology ("IT") Department is comprised of multiple subdivisions – the Help Desk and the department that handles software and the student portal and one that provides cyber security services.

21.

Mr. Pennington was one of four employees assigned to work on the Help Desk. As a Support Technician Tier 1, or Help Desk Specialist, it was Mr. Pennington's job to set up computers that would be used throughout campus, fix computers and other technology equipment, and provide support to students and staff at Defendant's main campus as well as two others.

22.

When Mr. Pennington received his only evaluation in December 2019, he received exemplary results.

23.

Mr. Pennington held the only entry level position in his division of the IT Department, but he generally worked harder than his more-senior colleagues.

24.

Prior to the events leading to Mr. Pennington's separation, his employment was largely uneventful. However, in or around spring 2020, there had been some conversation about Defendant laying off some of its employees.

25.

Mr. Pennington found that, around that time, Defendant began making Mr. Pennington's work more difficult and Defendant shortened most of the deadlines for the tasks assigned to Mr. Pennington.

26.

This did not cause Mr. Pennington too much concern about his job security because the IT Department was about a year behind on a long-term project of installing new computers around campus, and the other three employees assigned to the Help Desk had just received raises and/or promotions.

27.

Not only had Defendant promoted these supervisors into newly-created positions of "Director," Defendant had made similar moves across its institution.

28.

Still, during his employment, Mr. Pennington was routinely and frequently subjected to jokes and comments from his coworkers and supervisors concerning his age, and indeed, even though Mr. Pennington was the hardest working employee in his department, he was by far the oldest employee.

29.

Specifically, Mr. Pennington was often referred to as "old man" by his coworkers and supervisors.

30.

On or around April 29, 2021, Defendant advised Mr. Pennington that he was going to be terminated as a result of his position being eliminated.

31.

Apparently, Mr. Pennington was the only employee in the entire IT Department who was to be laid off.

32.

According to Defendant, it eliminated 60 positions, including that held by Mr. Pennington.

33.

However, of those 60 positions eliminated, only thirteen (13) were held by individuals who were under the age of 40.  23 of the eliminated positions were held by individuals who were at least 40 years of age, and the remaining twenty-four positions were vacant when they were purportedly "eliminated."

34.

Around the same time, Defendant provided Mr. Pennington with a Georgia Department of Labor Separation Notice, indicating that his position had been eliminated.

35.

Additionally, in correspondence provided alongside of his Separation Notice, Defendant's Vice President of Human Resources, Jill Robins, acknowledged that Mr. Pennington had been an "excellent employee."

36.

Defendant provided Mr. Pennington with a little reassurance because he had been told that, despite his separation, Defendant would assist Mr. Pennington in obtaining a new position for which he qualified if and when one became available. In VP Robins letter, she even stated that Mr. Pennington was eligible for rehire.

37.

Defendant was gracious enough to provide Mr. Pennington with a "Settlement Agreement and General Release" (hereinafter, "Agreement").

38.

While Defendant purportedly did not have enough money to continue paying Mr. Pennington, an "excellent employee," for his work, and Defendant was so poor that it had to eliminate 24 vacant positions, it apparently had enough funds to pay Mr. Pennington $7,150.00 in order to go away and waive any discrimination claims.

39.

Moreover, Defendant's Agreement required Mr. Pennington to promise that he would never seek employment from Defendant in the future, which directly contradicts Defendant's assurances that it would help Mr. Pennington find an open position for which he was qualified, including VP Robbins express statement made in her reference letter

40.

In exchange for Defendant's supposed gratuities, Mr. Pennington only had to release and waive any potential claims that he had against Defendant.

41.

Defendant gave Mr. Pennington twenty-one (21) days to consider whether to accept the Agreement.

42.

Not only did VP Robbins confirm the 21-day deadline in an email, but she even provided Mr. Pennington with a calculation of the day of his deadline.

43.

On the day before the deadline, Mr. Pennington had to request a list of the job titles and ages of all other employees being laid off alongside of Mr. Pennington.

44.

While Mr. Pennington was indeed provided with this information when he sought clarification about his deadline in light of the mass layoff, VP Robbins again confirmed that Mr. Pennington only had 21 days to consider the Agreement.

45.

When Mr. Pennington explained that it was his understanding that he should be given 45 days under the Older Workers Benefit Protection Act, VP Robbins was clearly not aware of this provision because she responded that that "[t]he [Worker Adjustment and Retaining Notification Act ("WARN Act")] does not apply in this situation (unless you are referring to something else)."

46.

As Mr. Pennington had expressly stated less than a half hour earlier, he was indeed referring to an entirely different statute.

47.

As a result, Mr. Pennington reluctantly signed and returned the Agreement, and in so doing, he explained to VP Robbins that he thought and believed that he had more time under the aforementioned statute.

48.

For a second time, Defendant ignored Mr. Pennington's request to have the full amount of time provided under the Older Workers Benefit Protect Act to consider the severance agreement.

49.

One of the provisions of the Agreement that Mr. Pennington had been struggling to understand – as he was being rushed to return the signed agreement – was the fact that he could

not reapply to work with Defendant, despite the repeated assurances that Defendant made about helping Mr. Pennington find a new position.

50.

Ultimately, the last day of Mr. Pennington's employment with Defendant was April 30, 2021, and he received the severance pay that he had been offered by Defendant.

51.

However, soon after Mr. Pennington's separation, Defendant provided an employee, Kora Mmayie, who had just transferred from its Engineering Department to the other division of the IT Department, into both Mr. Pennington's position and his office and Defendant even gave Mr. Mmayie the same laptop that Mr. Pennington had previously used.

52.

Mr. Mmayie neither has a degree in information technology nor industry-recognized certification in IT like Mr. Pennington, and Mr. Mmayie was far less qualified.

53.

Moreover, Mr. Mmayie was in his twenties at the time, and he is therefore much younger than Mr. Pennington.

54.

According to the Older Workers Benefit Protection Act, part of the Age Discrimination in Employment Act, an employer that requests that a covered employee waive their age discrimination claims is required to provide the laid off employees with at least 45 days to consider the waiver or severance agreement. 29 U.S.C. § 626. Defendant not only failed to provide Mr. Pennington with the requisite period of time, Defendant refused to allow such time when Mr.

Pennington explicitly referenced this law.  As a result, any waiver of age discrimination claims that Mr. Pennington may have executed is invalid as a matter of law.

Procedural/Administrative Background

55.

On or about October 27, 2021, Mr. Pennington submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that she had been subjected to discrimination based age when he was terminated on June 30, 2021.  The EEOC assigned Mr. Pennington Charge Number 410-2022-00702.

56.

On November 10, 2020, the EEOC issued a Dismissal and Notice of Rights dated September 10, 2020.

57.

Defendant had actual notice of the EEOC Charge and participated in the administrative proceedings.

58.

Mr. Pennington has exhausted his administrative remedies as to her first Charge of Discrimination and he is filing the instant action within ninety days of the EEOC's issuance of a Dismissal and Notice of Rights.

**COUNT I:**
**AGE DISCRIMINATION IN VIOLATION OF THE**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**

59.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 58 as if the same were set forth herein.

...

60.

Pursuant to the Age Discrimination in Employment Act, it is unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of his or her employment because of such individual's age. 29 U.S.C. § 623.

61.

At all relevant times herein, Plaintiff was between the ages of forty and seventy.

62.

As alleged herein, Plaintiff was qualified and applied for the position of Support Technician Tier 1, or Help Desk Specialist.

63.

On or about June 30, 2021, Defendant terminated Plaintiff's employment.

64.

After Defendant terminated Plaintiff's employment, Defendant replaced Plaintiff with an individual who was in his twenties, and was therefore sufficiently younger that Plaintiff.

65.

Previously, Plaintiff had frequently and routinely been subject to comments, names, and jokes as a direct result of his advanced age.

66.

At the time of Plaintiff's termination, he was the significantly older than the other employees in his department, and while Defendant claims that Plaintiff was separated as a part of a mass layoff, Plaintiff was the only person in his department whose employment was separated.

67.

The foregoing is evidence supporting an inference that Defendant's termination of Plaintiff's employment was due to Defendant's discriminatory motive based on age.

68.

Defendant will be unable to present any evidence of a legitimate nondiscriminatory motive for terminating Plaintiff's employment.

69.

Plaintiff will prove that the Defendant's stated reasons are pretextual, were willful and indeed motivated by Plaintiff's age.

70.

Plaintiff has been injured by Defendant's discrimination based on age, and he is entitled to all damages allowed under the Age Discrimination in Employment Act, including back pay including fringe benefits, front pay or reinstatement, injunctive relief, liquidated damages, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT II:
## AGE DISCRIMINATION IN VIOLATION OF THE
## FAIR EMPLOYMENT PRACTICES ACT

71.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 58 as if the same were set forth herein.

72.

Pursuant to the Fair Employment Practices Act, it is unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of his or her employment because of such individual's age. O.C.G.A. § 45-19-29.

73.

At all relevant times herein, Plaintiff was between the ages of forty and seventy. O.C.G.A. § 45-19-28.

74.

As alleged herein, Plaintiff was qualified and applied for the position of Support Technician Tier 1, or Help Desk Specialist.

75.

On or about June 30, 2021, Defendant terminated Plaintiff's employment.

76.

After Defendant terminated Plaintiff's employment, Defendant replaced Plaintiff with an individual who was in his twenties, and was therefore sufficiently younger that Plaintiff.

77.

Previously, Plaintiff had frequently and routinely been subject to comments, names, and jokes as a direct result of his advanced age.

78.

At the time of Plaintiff's termination, he was the significantly older than the other employees in his department, and while Defendant claims that Plaintiff was separated as a part of a mass layoff, Plaintiff was the only person in his department whose employment was separated.

79.

The foregoing is evidence supporting an inference that Defendant's termination of Plaintiff's employment was due to Defendant's discriminatory motive based on age.

80.

Defendant will be unable to present any evidence of a legitimate nondiscriminatory motive for terminating Plaintiff's employment.

81.

Plaintiff will prove that the Defendant's stated reasons are pretextual, were willful and indeed motivated by Plaintiff's age.

82.

Plaintiff has been injured by Defendant's discrimination based on age, and he is entitled to all damages allowed under the Fair Employment Practices Act in an amount to be proven at trial.

**JURY DEMAND**

Pursuant to the Georgia Civil Practice Act, Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff George Pennington respectfully prays for the following relief:

1)   That Summons and Process be issued to Defendant The Board of Trustees of Georgia Military College, and that said Defendant be served as provided by law;

2)   That this matter be tried before a jury;

3)   That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for discrimination based on age, and grant Plaintiff all relief allowable under the Age Discrimination in Employment Act;

4)   That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for discrimination based on age, and grant Plaintiff all relief allowable under the Fair Employment Practices Act; and,

5)     For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 29th day of December, 2022.

                                                KENNETH E. BARTON III  
                                                Georgia Bar No. 301171  
                                                M. DEVLIN COOPER  
                                                Georgia Bar No. 142447  
                                                *Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP  
170 College Street  
Macon, Georgia 31201  
(478) 841-9007 telephone  
(478) 841-9002 facsimile  
keb@cooperbarton.com  
mdc@cooperbarton.com